IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LATISHA SCOTT,

Plaintiff,

v.                                                    Case No. 12-1152-JTM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

MEMORANDUM AND ORDER

The court has before it plaintiff Latisha Scott's petition for review of a final

decision of the Commissioner of Social Security (Dkt. 11). Scott challenges the

Administrative Law Judge's ruling, arguing that the ALJ improperly evaluated the

medical opinion evidence and Scott's own allegations in assessing Scott's residual

functional capacity ("RFC") and finding her not disabled. The court finds that the case

must be remanded to the ALJ to address the apparent conflict between Scott's RFC and

the job requirements the Vocational Expert testified Scott could perform.

## I. Background

Scott filed her application for disability and supplemental security income

benefits on January 26, 2010, claiming she became disabled on June 11, 2009. Her

application was denied initially and on reconsideration. On August 24, 2011, after a

hearing, the ALJ denied Scott's application. Scott appealed, and the Appeals Council

denied her appeal on February 24, 2012. Thereafter, Scott filed this petition for review.

The medical evidence and hearing testimony are set forth in the ALJ's decision and incorporated herein. The ALJ concluded that Scott suffered from severe impairments because of degenerative disc disease of the cervical and lumbar spines, fibromyalgia, major depression disorder, and anxiety. But he found that she did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that Scott retains the residual functional capacity to perform:

> Sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that [she] can lift and/or carry 10 pounds frequently and occasionally, stand and/or walk for 2 hours out of an 8 hour workday (with normal breaks), sit for up to 6 hours out of an 8- hour workday, occasionally push or pull with hands and occasionally reach, finger, feel and handle with the left (nondominant) hand; except, [she] is limited to simple unskilled work and would need to avoid any exposure to work hazards or heights.

Dkt. 9, Exh. 2, p. 16. After analyzing the evidence, the ALJ concluded that Scott could not perform her past relevant work, but that she could perform other jobs existing in significant numbers in the national economy. Specifically, the ALJ found that Scott could work as a bonder (DOT code 726.685-066), a production checker (DOT code 669.687- 014), or wire wrapper/patcher (DOT code 723.687-010). Dkt. 9-2, p. 22–23.

The ALJ gave the opinions expressed by Dr. Aaron Davis, her treating physician, "controlling" weight in one instance and "little" weight in another; the ALJ did not specifically articulate the weight he assigned to one part of Dr. Davis's opinion. The ALJ also gave the opinion of Dr. Anne Winkler, a non-examining medical expert, "great" weight. He found that Scott's testimony was not entirely credible. The ALJ relied on a vocational expert's testimony regarding the jobs that exist for a person with Scott's

limitations. Ultimately, the ALJ found that Scott has not been disabled since June 11, 2009.

In this petition for review, Scott alleges four grounds of error: (1) that the ALJ erred by failing to derive a proper RFC; (2) that the ALJ erred by failing to give proper weight to the opinions of Scott's treating physician; (3) that the ALJ erred by failing to provide a meaningful credibility analysis of Scott's testimony; and (4) that the ALJ erred by finding that Scott could work as a bonder, production checker, or a wire wrapper/patcher.

## II. Legal Standard

Judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) is limited to whether the decision of the Commissioner is supported by substantial evidence in the record as a whole. *Cowan v. Astrue*, 552 F.3d 1182, 1184-85 (10th Cir. 2008). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). It requires more than a scintilla, but less than a preponderance. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Evidence is insubstantial when it is overwhelmingly contradicted by other evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The court's role is not to reweigh the evidence or substitute its judgment for that of the Commissioner. *Cowan*, 552 F.3d at 1185. Rather, the court must determine whether the Commissioner's final

decision is "free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

An individual is disabled only if the individual can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). The physical or mental impairment must be so severe that the individual cannot perform any of his or her past relevant work, and cannot engage in other substantial gainful work existing in the national economy, considering the individual's age, education, and work experience. *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920.

The Social Security Administration, pursuant to the Social Security Act, has established a five-step evaluation process for determining whether an individual is disabled. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); 20 C.F.R. § 404.1520(a). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989). The first three steps require the Commissioner to determine: (1) whether the claimant has engaged in gainful activity since the disability began; (2) whether the claimant has severe physical or mental impairments; and (3) whether the severity of the impairments meet or equal a specific list of impairments. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); 20 C.F.R. § 404.1520. When the impairment does not meet or equal a listed impairment, the

ALJ must "make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(e).

After assessing the claimant's residual functional capacity, the Commissioner moves to steps four and five, which require assessing whether the claimant can perform any past relevant work and whether the individual can generally perform other work that exists in the national economy. *Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520. While the claimant bears the burden of proof in steps one through four to prove that the claimant has a disability that prevents performance of past relevant work, the Commissioner bears the burden at step five to prove that there are jobs in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).

### III. Legal Conclusions

The court analyzes each of Scott's challenges to the ALJ's decision in the order of the five-step process followed in these cases. *See Allen*, 357 F.3d at 1142. Scott does not challenge the ALJ's findings that she met the insured status requirements of the Social Security Act through September 30, 2008, and has not engaged in substantial gainful activity since June 11, 2009.

*A. Residual Functional Capacity*

Scott's first objection comes at step three of the analysis, when the ALJ made his finding on her RFC. Scott argues that the ALJ erred in its RFC analysis in three ways: (1) by giving substantial weight to Dr. Winkler's opinions, (2) by failing to provide a link between the evidence and his conclusions, and (3) by failing to consider the combined

effect of Scott's impairments. The court addresses these arguments in turn and concludes that the ALJ's RFC assessment is supported by substantial evidence.

### 1. Dr. Winkler's Opinion

First, Scott argues that the ALJ should not have given Dr. Winkler's opinions substantial weight because she was a non-examining physician with no treating relationship with Scott. The ALJ admitted that as a non-examining physician, Dr. Winkler's opinion "does not as a general matter deserve as much weight as those of examining or treating physicians . . . ." Dkt. 9-2, p. 21. However, the ALJ explained that Dr. Winkler's opinion deserved substantial weight because she gave "specific reasons for the opinion," and it was "grounded in the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations." *Id.* The ALJ found that Scott's testimony regarding the degree of pain she experienced did not match the objective medical evidence. *Id.* at 17. For example, Scott claimed a high degree of pain in her back due to degenerative disc disease. But an MRI of her spine revealed only minimal dessication in her lumbar spine and a normal cervical spine. The ALJ followed this example with several others.

This court does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan*, 552 F.3d at 1185. Although Dr. Davis's opinion differed slightly, the court does not find his opinion or any other evidence to overwhelmingly contradict the ALJ's findings. *See O'Dell*, 44 F.3d at 858. As previously noted, the ALJ's conclusions must be based on substantial evidence in this case, which requires more than a scintilla, but need not meet a preponderance standard. *See Zoltanski*, 372 F.3d at

1200. The court finds that the ALJ had adequate evidence to give Dr. Winkler's opinion substantial weight in the RFC analysis.

## 2. Link Between Evidence and the ALJ's Conclusions in RFC Analysis

Next, Scott argues that the ALJ failed to provide a link between the evidence and his conclusions in the RFC analysis. "Residual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations. *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945. The ALJ's RFC analysis must "describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment. *Castillo v. Astrue*, No. 10-1052-JWL, 2011 WL 13627, at *11 (D. Kan. Jan. 4, 2011).

The ALJ provided a discussion of the medical and non-medical evidence upon which he relied in making his RFC assessment, as is required. *See* Dkt. 9-2, p. 16–21. He noted that Scott had been treated for degenerative disc disease of the cervical and lumbar spine, major depression, and anxiety. According to different tests and doctor's opinions, however, Scott's cervical and lumbar spinal areas were generally normal. Despite these impairments and Scott's insistence on the intensity and persistence of her pain, Scott had a normal gait and station, normal motor function, and only mild difficulty with maneuvers. According to Dr. Davis's medical source statement from May 2010, Scott's medication generally had been successful in treating her symptoms. Scott had reported to Dr. Davis that she was riding a bicycle for thirty minutes twice a

week. The ALJ noted that the evidence showed Scott had some limitations in lifting, carrying, standing, walking, and using her hands.

As for her alleged mental impairments, the record showed that Scott had not been entirely compliant in taking her prescribed medication for mental impairments, which suggests that the symptoms may not have been as limiting as Scott alleged. Despite this, the evidence showed Scott had some mental limitations, but she had good memory and concentration and her focus was within normal limits.

Additionally, the ALJ discussed non-medical evidence, such as Scott's ability to perform daily activities, including working. At the hearing, Scott had described limited activities of living, but the ALJ found that two factors weighed against considering these allegations to be strong evidence of disability. First, her allegedly limited daily activities cannot be objectively verified with a reasonable degree of certainty. Second, even if Scott's daily activities were as limited as she claimed, it is difficult to attribute this to her medical condition because of the relatively weak medical evidence already discussed. The record reflects work activity after the alleged onset date, and even though the ALJ did not consider it substantial gainful activity it reflects that Scott's daily activities are, at least at times, somewhat greater than she has reported. The ALJ also pointed out that Scott had visited the zoo with her daughter and went on vacation to an amusement park, noting that this suggests she may have overstated her symptoms and limitations.

The ALJ thoroughly discussed the evidence, describing how it supported his RFC conclusions. *Castillo*, 2011 WL 13627, at *11. He cited specific medical facts and

nonmedical evidence. *Id.* Therefore, the court finds that the ALJ's decision on Scott's RFC was supported by substantial evidence.

### 3. Combined Effect of All of Scott's Impairments

Finally, Scott argues that the ALJ did not properly consider the combined effect of all her impairments in the RFC assessment. Specifically, Scott argues that the ALJ failed to account for her ganglion cysts and anemia in the RFC because they were non-severe impairments. "In assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

The court finds that the ALJ's RFC conclusion incorporated Scott's impairments appropriately. In step two of the analysis, the ALJ noted that surgery had been successful in relieving the symptoms of Scott's ganglion cyst issue before and that the record indicated Scott would be undergoing surgery on this again. Dkt. 9-2, p. 14. Although the ALJ did not specifically discuss Scott's ganglion cysts in his RFC assessment, he did cite specific evidence showing that motor function was normal in her left arm and that her left hand's grip strength was 53 pounds. Regardless, the ALJ clearly incorporated the effects of Scott's ganglion cysts when he included in the RFC assessment Scott's limitation to "occasionally reach, finger, feel and handle with the left (non-dominant) hand. Substantial evidence supported this conclusion.

The ALJ treated Scott's anemia similarly. At step two, the ALJ noted that Scott had a brief hospitalization in July 2009 for lightheadedness and dizziness stemming from anemia. Scott was discharged with no restrictions after a blood transfusion, and

laboratory tests showed an improvement in her condition. The ALJ noted that Scott reported no limitations imposed by her treatment provider. It was clear in step two of the analysis that the ALJ believed Scott's anemia did not impact her daily life much, if at all. Although he did not discuss the anemia specifically in evaluating Scott's RFC, the ALJ included a limitation to work involving exposure to hazards or heights, compensating for Scott's lightheadedness and dizziness claims stemming from anemia. Once again, the court finds the RFC assessment supported by substantial evidence.

### B. Dr. Davis's Opinion

Next, Scott argues that the ALJ "arbitrarily picked and chose" among Dr. Davis's opinion evidence and failed to give it proper weight. When the ALJ fails to provide an explanation "of how he assessed the weight of the treating physician's opinion," the court cannot presume that the ALJ correctly considered a physician's opinions. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). "Medical Source Statements submitted by treating sources provide medical opinions which are entitled to special significance." SSR 96-5p, 1996 WL 374183, at * 4 (July 2, 1996). When considering opinion evidence, the ALJ "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). However, for the physician's opinion to be entitled to controlling weight, it must be "well supported by clinical and laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence in the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).

The ALJ's decision stated that he assigned "controlling weight" to Dr. Davis's opinion that Scott was limited to lifting less than five pounds frequently and ten pounds occasionally, standing and/or walking two hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. Dkt. 9-2, p. 20. But the ALJ discounted Dr. Davis's opinion that Scott needed to lie down or recline twice a day for ten to fifteen minutes and assigned this opinion "little weight" because it was unsupported by Dr. Davis's own treatment records. *Id.* at 21. His treatment notes do not indicate any need for Scott to lie down during the day to alleviate symptoms. His records show that Scott's symptoms were improving with osteopathic manipulation and physical therapy. *Id.* at 17. The ALJ found that most of the limitations proposed by Dr. Davis were supported by the medical evidence and explained why he did not find this limitation credible. *Id.* at 21.

Ultimately, the ALJ found a middle ground between the opinions of Dr. Winkler and Dr. Davis, Scott's treating physician. The ALJ stated that he "basically agree[d]" with both doctors. However, he disagreed with both on certain limitations. The ALJ noted that "the record supports a more restricted limitation in the claimant's ability to sit" than Dr. Winkler had opined. *Id.* at 21. The ALJ disagreed with Dr. Davis on his opinion regarding "the claimant's need to lie down or recline 2 times a day, for 10–15 minutes, to alleviate symptoms," noting that this conclusion was "not supported by [Davis's] own treatment record and is therefore given little weight." *Id.* The objective evidence the ALJ relied upon in disagreeing with Dr. Davis's opinion included the x-rays of Scott's spine that were normal, her stable gait and station, normal motor

function in all four extremities, and grip strength of 62 pounds with the right hand and 54 pounds with the left. *Id.* at 20. Despite Scott's characterization of the ALJ's decision as "picking and choosing," the court finds that his treatment of Dr. Davis's opinion was based on substantial evidence.

### C. Credibility of Scott's Testimony

Scott also takes issue with the ALJ's credibility analysis of her testimony. She argues that the ALJ's analysis "is conclusory and in boilerplate fashion, which is insufficient." When weighing the credibility of the Claimant's statements regarding her pain or the severity of her symptoms, the ALJ must consider "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987)). Some of the factors the ALJ may consider are: the levels of medication and their effectiveness, the extensiveness of the attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence. See 20 C.F.R. §§ 404.1529, 416.929; *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991). The court finds that the ALJ met this requirement in his credibility analysis.

The ALJ discussed Scott's subjective allegations throughout his opinion. *See* Dkt. 9-2, p. 16–20. He determined that "[Scott]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* at 16. Scott argues this is merely boilerplate language. It may well be— as any ultimate legal conclusion may appear to be—but the ALJ provided substantial analysis in support of his conclusions.

The ALJ discussed Scott's subjective allegations of her limited activities of daily living and limited ability to perform physical functions due to pain in her back and neck. *Id.* at 19–20. The ALJ noted Scott's alleged severe fatigue and limitations in concentration, memory, and focus, as well as severe side effect from her medications. *Id.* at 20. The ALJ also considered a third-party statement by Edwina Wilson, a friend of Scott's, who also alleged significant limitations in Scott's ability to perform daily activities. *Id.* at 21.

The ALJ evaluated Scott's and Wilson's statements in light of the objective medical evidence, including Scott's use of medications and their side effects, her inconsistent statements, and her work history. The ALJ determined the medical evidence did not support Scott's allegations, at least to the extent of the intensity, persistence, and limiting effects she claimed. Scott claimed disabling neck and back impairments, but an MRI scan of her lumbar spine showed minimal desiccation (loss of fluid of the discs) and was otherwise normal. *Id.* at 17. An MRI of her cervical spine was

also normal. *Id.* A physical examination showed moderate tenderness to palpation with some inflammation of the paraspinal muscles, but a straight leg raise was negative, and Scott's range of motion was normal. *Id.* A consultative examiner noted that Scott had lumbar and cervical arthalgias and pain with limited range of motion, but had only mild difficulty with heel and toe walking, squatting, arising from a sitting position, and hopping. *Id.* at 17. X-rays of Scott's spine were normal. Her gait and station were stable, and her motor function was normal in all four extremities. A medical examination report indicated the Scott's MRI studies showed no significant reasons why she should be in pain. *Id.* On another examination, Scott had only minimal discomfort on cervical range of motion, a negative straight leg raise, and no difficulty with gait, toe, and heel ambulation. *Id.* Despite Scott's alleged mental limitations, the evidence showed that she had good memory and concentration, and her focus was within normal limits. *Id.* at 19.

The ALJ considered Scott's activities of daily living, finding that the evidence suggested Scott's alleged limitations were not entirely credible. For example, the evidence showed that Scott could care for children at home, feeding them, doing their hair, helping with homework, and taking them to school. *Id.* at 20. Scott stated she could shop for groceries, prepare simple meals, iron, fold laundry, and do "some" cleaning like dusting and wiping tables. As was mentioned above, the ALJ considered the work activity by Scott after the alleged onset date, a visit the zoo with her daughter, and a vacation to an amusement park, noting that these activities tend to discredit Scott's testimony of her symptoms and limitations.

Throughout several paragraphs, the ALJ mentioned a specific claim by Scott about her limitations, then provided medical or nonmedical evidence that tended to suggest her limitations were less severe than she claimed. *Id.* at 19–20. However "boilerplate" his concluding statement regarding Scott's credibility may appear, the court finds that the ALJ gave an adequate credibility analysis supported by substantial evidence.

### D. ALJ's Findings Regarding Jobs Scott Is Able to Perform

Finally, Scott argues that the ALJ erred by finding that she could work as a bonder, production checker, or a wire wrapper/patcher, claiming her limitations preclude her from working in these jobs. When a Vocational Expert provides evidence in a disability determination, "the [ALJ] has an affirmative responsibility to ask about any possible conflict between . . . the evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If there is a conflict, "the [ALJ] must resolve this conflict before relying on the [Vocational Expert's] evidence to support a determination or decision that the individual is or is not disabled." *Id.* " '[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.' " *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (quoting *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)).

The ALJ determined that Scott was able to perform sedentary work, and that she could "occasionally push or pull with hands and occasionally reach, finger, feel, and handle with the left (non-dominant) hand." Dkt. 9-2, p. 16. The vocational expert determined that Scott could perform work as a bonder, production checker, or wire wrapper/patcher. *Id*. at 22–23. The position of bonder requires frequent handling and fingering, the position of production checker requires frequent reaching, and handling, and the position of wire wrapper/patcher requires frequent reaching, handling, and fingering. DOT 669.687-014; DOT 726.685-066; DOT 723.687-010. The ALJ did not address the conflict between Scott's ability to "occasionally" reach, finger, and handle, and these positions' requirement that a person "frequently" reach, finger, and handle. Under *Hackett* and SSR 00-4p, the court must remand the case so the ALJ can explain this conflict.

## IV. Conclusion

The court finds that substantial evidence supported the ALJ's residual functional capacity assessment, his assignment of weight to both Dr. Davis's and Dr. Winkler's opinions, and his credibility analysis of Scott's own subjective claims. The ALJ sufficiently analyzed the medical and non-medical evidence throughout his opinion. However, the ALJ's decision must be remanded because the ALJ relied on the Vocational Expert's opinion in determining Scott's nondisability without clearing up the conflict between Scott's RFC and the requirements of the jobs the Vocational Expert testified she could perform.

IT IS THEREFORE ORDERED this 11th day of April, 2013, that the ALJ's decision is reversed. On remand, the ALJ must explain the apparent conflict between Scott's RFC and the requirements of the jobs the ALJ found she could perform.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE